UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

LYNNE WANG, YU FANG INES KAI, and HUI JUNG PAO, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

CHINESE DAILY NEWS, INC., et al.,

    Defendant.

Case No. CV 04-1498 CBM (JWJx)

CLASS ACTION

FINDINGS OF FACT AND CONCLUSIONS OF LAW

The matter before the Court is the Bench Trial held July 31, 2007 through August 2, 2007.

## JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## FACTUAL AND PROCEDURAL BACKGROUND

This class action lawsuit consists of approximately 200 members, including former and current salespersons, reporters and non-exempt employees who worked for Defendant Chinese Daily News ("CDN") in Monterey Park, California from

March 5, 2000 to the present.

On January 20, 2005, the Court issued an Amended Order granting Plaintiffs' Motion for Class Certification under Rule 23(b)(2). On June 27, 2005, the Court certified the collective action pursuant to FLSA § 16(b). *See* 29 U.S.C. § 216(b).

Before trial began, the parties filed cross-motions for summary judgment. In ruling on those motions, the Court found that (1) CDN's vacation buy-back policy violated California Labor Code Section 227.3, and (2) CDN's wage statements violated California Labor Code Section 226 by not accurately representing the total hours its employees worked. The Court further concluded that CDN had "knowingly and intentionally" violated Section 226, thereby entitling Plaintiffs to relief under Sections 226(e) and (g).

The trial commenced on November 28, 2006 and was submitted to the jury on January 5, 2007. During the trial, the parties stipulated to dismiss Plaintiffs' overtime claims under the California Labor Code as to Salespersons only. On January 10, 2007 the jury returned a verdict in favor of Plaintiffs on all causes of action. Specifically, as to the Reporters, the jury found that (1) CDN failed to pay the proper overtime rate under state law, (2) CDN's failure to pay overtime was "willful" under California Labor Code Section 203, and (3) CDN denied the Reporters meal breaks. The jury awarded $734,519.00 in damages for failure to pay overtime and $121,938.00 in damages for missed meal breaks. As for the Salespersons, the jury found that (1) CDN had them work overtime but failed to pay them the proper overtime rate and (2) CDN knew or acted with reckless disregard as to whether such a failure to pay overtime was prohibited by the Fair Labor Standards Act ("FLSA"). The jury awarded $677,546.00 in damages for the failure to pay overtime for the three year statutory period under FLSA. The parties later stipulated to reduce these damages to $84,693.25. As to the "Time card

employees," the jury found that (1) CDN failed to pay them $16,861.00 in overtime, (2) CDN's failure to pay overtime was "willful" under Labor Code Section 203, and (3) CDN failed to allow Timecard Employees meal or rest breaks. The jury awarded damages in the amount of $243,098.00 for missed meal and rest breaks. As to the "Other employees," the jury found that CDN denied them meal and rest breaks, and, accordingly, awarded $620,806.00 in damages. Finally, the jury awarded plaintiffs $105,348.00 as compensation for underpaid vacation for the three year statutory period allowed under the California Labor Code.

A bench trial on damages was held. The Court was asked to determine if Plaintiffs are entitled to damages, and if so, the amount of damages for: (1) the value of a fourth year's worth of damages pursuant to a four year statute of limitations in Business & Professions Code Section 17200, et seq.; (2) unpaid overtime pursuant to Section 17200, et seq., for the group of Salespersons who did not file formal "opt ins" to the FLSA claim; (3) interest owed to the class; (4) improper wage reporting pursuant to Labor Code Section 226; and (5) waiting time penalties pursuant to Labor Code Section 203 for CDN's "willful" failure to pay overtime. Finally, Plaintiffs have requested that the Court determine whether Defendant should be enjoined from committing further violations of state and federal wage and hour laws.

## FINDINGS OF FACT

1. Plaintiffs presented witnesses Stephanie Rizzardi-Pearson, their expert witness regarding damages, Steve Gao, the manager of the Human Resources Department at Chinese Daily News, Shyh Yan Chen, the Editor-in-Chief at Chinese Daily News, and Irene Chen, a human resources specialist at Chinese Daily News. Defendant presented no additional witnesses.

2. Plaintiffs' expert witness, Ms. Rizzardi-Pearson, used ratios to calculate the amount of damages owed Plaintiffs. The ratios were derived from payroll data provided by Defendant for the original 44 class-members; a ratio representing the enlarged class of 200 was applied to the initial calculations to arrive at the damage amounts to which she testified. Trial Tr., Day 1 at 52:22-53:25.

3. Ms. Rizzardi-Pearson calculated damages to include a 10 percent simple interest rate per year. She calculated her totals using February 5, 2007 as an end date for interest. Trial Tr., Day 1 at 20:10-25.

4. For overtime due Timecard Employees, Reporters and Salespersons, Ms. Rizzardi-Pearson used a four year statute of limitations commencing on March 5, 2000. The employment data provided by Defendant ended on July 30, 2005, which Ms. Rizzardi-Pearson used as her end period. Trial Tr., Day 1 at 19:17-20:25.

5. Ms. Rizzardi-Pearson testified that the overtime pay owed to Timecard Employees is $37,949.00 and the interest owed is $23,271.00 with a daily interest rate of $10.39. Trial Tr., Day 1 at 20:1-3, 21:9-11, 22:2-4.

6. Ms. Rizzardi-Pearson testified that the overtime pay owed to Reporters is $1,074,728.00 and the interest owed is $544,654.00 with a daily interest rate of $294.25. Trial Tr., Day 1 at 21:19-22:1.

7. Ms. Rizzardi-Pearson testified that the overtime pay owed to all Salespersons is $833,338.00 and the interest owed is $418,072.00 with a daily interest rate of $228.16. Trial Tr., Day 1 at 22:8-22:15.

8. Ms. Rizzardi-Pearson used a four-year statute of limitations period for her calculations pertaining to Timecard Employees, Other Employees and Reporters for missed breaks. For these calculations she began her

calculations on January 1, 2001, not March 5, 2000, because of a change in law effective as of that date. Trial Tr., Day 1 at 22:16-23:1.

9. Ms. Rizzardi-Pearson testified that Timecard Employees are owed $258,144.00 for missed meal and rest breaks and the interest owed is $109,071.00 with a daily rate of interest of $70.68. Trial Tr., Day 1 at 23:2-15.

10. Ms. Rizzardi-Pearson testified that Reporters are owed $128,356.00 for missed breaks and the interest owed is $57,884.00 with a daily rate of interest of $35.14. Trial Tr., Day 1 at 23:16-25.

11. Ms. Rizzardi-Pearson testified that Other Employees are owed $611,302.00 for missed breaks and $233,827.00 for interest with a daily rate of $167.37. *See* Trial Tr., Day 2 at 70-76; Ex. 1450 at 11, 12; Ex. 1469.

12. Ms. Rizzardi-Pearson calculated the vacation buyback for the class from March 5, 2001 with a four year statute of limitation. She testified that $105,348.00 in damages and $43,762.00 in interest are owed for vacation buyback, with a daily rate of interest of $28.84. Trial Tr., Day 1 at 24:10-25:1.

13. Ms. Rizzardi-Pearson testified that based on a one-year statute of limitation period for waiting-time penalties, Plaintiffs damages amount to $61,013.[1] Trial Tr., Day 3 at 44:24.

14. Ms. Rizzardi Pearson testified that damages for inaccurate wage statements amount to $354,820.00 for all class members. Trial Tr., Day 1 at 25:13-18.

---

[1] This figure does not include waiting time penalties for salespersons because salespersons are not entitled to amounts for penalties under Cal. Bus. Prof. Code § 17200 et. seq.. *See* Order dated September 26, 2007.

-5-

15. The class of Plaintiffs considered for damages at the bench trial is the same class that the jury considered in awarding damages at the first phase of trial. Remington Chiang falls within this class of Plaintiffs because he does not earn a salary equivalent to two times California's minimum wage, which is required to be classified as an exempt employee.

16. Chinese Daily News continues to use the number 86.66 on its bi-monthly wage statements to reflect the hours worked by each employee. The hours on the wage statement do not change according to the actual amount of time each employee works. *See* Trial Tr., Day 3 at 71.

17. Chinese Daily News changed its vacation buyback policy commencing this year. The company no longer buys back vacation time. *Id.*

18. Chinese Daily News has implemented changes to its time sheets for Reporters as of June 1, 2007. The time sheets list overtime requirements and use a new format. Not all employees have been trained on the time sheets. *See id.*

19. Supervisors at Chinese Daily News have been instructed to remind their employees to take the breaks. *Id.* at 71-72.

20. Chinese Daily News has not changed its wage policies in regard to Salespersons.

**CONCLUSIONS OF LAW**

21. The California Business and Professions Code broadly defines "unfair competition" as, among other things, "any unlawful, unfair or fraudulent business act or practice...." Cal. Bus. & Prof. Code § 17200. A cause of action alleging an unlawful business practice under Section 17200, "borrows violations of other laws and treats these violations, when

- 6 -

committed pursuant to business activity, as unlawful practices independently actionable under [Bus. & Prof. Code] section 17200." *Farmers Ins. Exch. v. Superior Ct.*, 2 Cal. 4th 377, 383 (1992).

22. The statute of limitations for an unfair business practices claim is four years. *See* Cal. Bus. & Prof. Code § 17208.

23. California Business and Professions Code Section 17203 authorizes a court to "make such orders or judgments... as may be necessary" (1) to prevent practices constituting unfair competition and (2) to restore to any "person in interest" any real or personal property acquired by unfair competition. Cal. Bus. & Prof. Code § 17203. An order for payment of wages unlawfully withheld from an employee is a restitutionary remedy. *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 177 (2000).

24. Under California Labor Code Section 226(a), an employer must, either semimonthly or at the time of each payment, provide every employee a wage statement including, among other things:

> (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime ... and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

25. California Labor Code Section 226(e) provides that:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision [226](a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

26. If an employer discharges an employee, then the employer must

immediately pay the employee any earned but unpaid wages. Cal. Labor Code § 201. When an employee quits, the employer must pay the employee any earned but unpaid wages within three days of the employee's termination, unless the employee provided three days notice of his or her intention to quit, at which point he or she may demand the wages upon termination. Cal. Labor Code § 202. If an employer willfully fails to pay, in a timely manner, any wages of an employee who is discharged or quits, then the employer must continue to pay a waiting time penalty consisting of the employee's wages from the date they became due until paid, but not to exceed thirty days. Cal. Labor Code § 203.

27. California Labor Code Section 1194(a) provides that:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

28. In an action brought for the nonpayment of wages the court shall award interest at the rate of 10 percent on all due and unpaid wages, which shall accrue from the date that the wages were due and payable. California Labor Code § 218.6; Cal. Civ. Code § 3289.

29. Whenever an employment contract or employer provides for paid vacations, upon termination an employee must be paid for all unused vested vacation time as wages at his final rate. Cal. Lab. Code § 227.3. A "proportionate right to paid vacation 'vests' as the labor is rendered." *Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774, 784 (1982).

30. State law governs the court's award of prejudgment interest where state law

claims are before a federal court on supplemental jurisdiction. *Gentek Bldg. Products, Inc. v. Steel Peel Litigation*, 491 F.3d 320, 333 (6th Cir. 2007); *see also Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1126 (10th Cir. 2003).

31. Prejudgment interest is due on money paid as restitution under California Business and Professions Code Sections 17200 et. seq.. *Irwin v. Mascott* 112 F.Supp. 2d 937, 956 (N.D. Cal., 2000); *see* Cal. Civ. Code § 3287(a).

32. Where damages are owed, the amount of damages need not be calculated with absolute certainty. *GHK Associates v. Mayer Group, Inc.*, 224 Cal. App. 3d 856, 873 -874 (1990) ("The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation."). Rough approximations and statistical estimates may lead to the requisite "just and reasonable inference" of uncompensated hours worked for smaller groups. *See Bell v. Farmers Ins. Exchange,* 115 Cal. App. 4th 715, 749, 9 Cal. Rptr. 3d 544, 573 (2004).

33. "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203. A court has discretion to enjoin a party. *See Alaska Wilderness Recreation and Tourism Ass'n v. Morrison,* 67 F.3d 723, 732 (1995). Injunctive relief may be granted where there is "irreparable injury and inadequacy of legal remedies." *See id.*

34. A cause of action alleging violations of the FLSA under California Business Code Section 17200 is not preempted by the FLSA opt-in requirement. *See Harris v. Investor's Business Daily, Inc.*, 138 Cal. App. 4th 28, 33-34 (2006) (holding that the principles of federal preemption did not apply

where plaintiff class was pursuing equitable relief under Section 17200 for violation of the FLSA).

35. Plaintiffs are entitled to restitution under Cal. Bus. & Prof. Code § 17200 for Defendant's state and federal violations against them found by the jury in the first phase of the trial.

36. An employee may show overtime and wage violations if he proves that he has in fact performed work for which he was improperly compensated by producing sufficient evidence to show the amount and extent of that work as a "just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

37. Defendant has committed violations under FLSA. Damages calculated for overtime pay owed to all Salespersons amount to $833,338.00. *See* Findings of Fact ¶ 7. Salespersons involved in the certified collective action pursuant to FLSA are owed damages under Cal. Bus. & Prof. Code § 17200 for violations under FLSA.

38. The amount of overtime pay owed to Timecard Employees is $37,949.00 with a daily rate of interest of $10.39 commencing on March 5, 2000. *See* Findings of Fact ¶ 5.

39. The amount of overtime pay owed to Reporters is $1,074,728.00 with a daily interest rate of $294.25 commencing on March 5, 2000. *See* Findings of Fact ¶ 6.

40. The Timecard Employees are owed $258,144.00 for missed meal and rest breaks with a daily rate of interest of $70.68 commencing on January 1, 2001. *See* Findings of Fact ¶ 9.

41. Reporters are owed $128,356.00 for missed breaks with a daily rate of interest of $35.14 commencing on January 1, 2001. *See* Findings of Fact ¶ 10.

42. Other Employees are owed $611,302.00 for missed breaks with a daily rate of interest of $167.37 commencing on January 1, 2001. *See* Findings of Fact ¶ 11.

43. Plaintiffs are owed $105,348.00 in damages for vacation buyback commencing on March 5, 2001 with a daily rate of interest of $28.84. *See* Findings of Fact ¶12.

44. Plaintiffs are owed $61,013 for waiting-time penalties. *See* Findings of Fact ¶13.

45. Plaintiffs are owed $354,820.00 for inaccurate wage statements for all class members. *See* Findings of Fact ¶14.

46. Defendant has implemented, or is in the process of implementing, new policies that comply with state law regarding overtime and wage reporting as a result of this litigation. Nevertheless, not all of Defendant's current policies comply with federal and state law. *See* Findings of Fact ¶ 16-20. However, an injunction is unnecessary because Defendant has (1) essentially "abandoned" its unlawful business practices and (2) taken substantial steps towards compliance , thereby eliminating any real "threat of continuing violations." *Cortez*, 23 Cal. 4th at 170.

47. Plaintiffs' injuries are not irreparable nor are inadequate legal remedies available. Plaintiffs may be compensated through money damages for all injuries suffered due to Defendant's unlawful behavior. *See Alaska Wilderness,* 67 F.3d at 732. Accordingly, the Court denies Plaintiffs' request

for an injunction.

## CONCLUSION

Based on the Court's Findings of Fact and Conclusions of Law, the Court ORDERS the above amounts paid to Plaintiffs and DENIES Plaintiffs' request for an injunction. Plaintiffs are entitled to reasonable attorneys' fees and costs. The Court also believes that there are no outstanding motions pending before the Court.

To the extent that any findings of fact constitute conclusions of law, they are adopted as such, and to the extent that the conclusions of law constitute findings of fact, they are adopted as such.

**IT IS SO ORDERED.**

Dated: February 27, 2008

CONSUELO B. MARSHALL
United States District Judge