UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNNE WANG, YU FANG INES KAI, and HUI JUNG PAO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CHINESE DAILY NEWS, INC.,<br><br>Defendant. | CASE NO.<br>2:04-cv-01498- CBM(AJWx)<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION FOLLOWING REMAND |

The matter before the Court is Plaintiffs' Motion for Class Certification following Remand ("Motion"). Counsel for the parties appeared before the Court, the Honorable Consuelo B. Marshall presiding. Upon consideration of the papers and arguments submitted, Plaintiffs' Motion is **GRANTED**.

1

## JURISDICTION

The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367.

## BACKGROUND & PROCEDURAL HISTORY

Plaintiffs Lynne Wang, Yu Fang Ines Kai, and Hui Jung Pao, on behalf of themselves and all others similarly situated, filed this suit against their employer, Defendant Chinese Daily News, Inc. ("CDN") on March 5, 2004. In the complaint, Plaintiffs alleged multiple labor violations pursuant to the Fair Labor Standards Act ("FLSA"), the California Business and Professions code § 17200 *et seq.*, and the California Labor Code. In a January 20, 2005 Order, this Court certified Plaintiffs' FLSA claims as a collective action (Docket No.146.) and certified the state-law claims as a class action. (Docket No. 116.)

Before trial, the parties filed cross-motions for summary judgment, and in ruling on those motions the Court found that (1) CDN's vacation buy-back policy violated California Labor Code Section 227.3 and (2) CDN's wage statements violated California Labor Code Section 226 by not accurately representing the total hours its employees worked. (Docket No. 325.) Thereafter, a sixteen-day jury trial was held and the jury reached a verdict in favor of the Plaintiffs for all causes of action, including Defendant's failure to pay overtime (to all employees), failure to provide meal and rest breaks (to reporters, time card employees, and other employees), and having an unlawful vacation buy-back policy (to all employees). (Docket No. 517.) After the jury trial, there was a three-day bench trial relating to damages. The Court entered judgment consistent with the jury's verdict and awarded damages of approximately $5.1 million for overtime pay owed, missed meal and rest breaks, vacation buy-back owed, waiting-time penalties, and inaccurate wage statements. (Docket No. 737; *see also* Motion 6:1-12.)

On September 27, 2010, the Ninth Circuit affirmed this Court's judgment. *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 761 (9th Cir. 2010). On October 3, 2011, the United States Supreme Court vacated and remanded the Ninth Circuit's affirming opinion for further consideration in light of *Wal–Mart Stores, Inc. v. Dukes*, ––– U.S. ––––, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). *Chinese Daily News, Inc. v. Wang*, 132 S. Ct. 74 (2011). Thereafter, the Ninth Circuit reversed this Court's certification of the Plaintiff class under Federal Rule of Civil Procedure 23(b)(2), and remanded for this Court to reconsider its analysis of class certification under Rules 23(a)(2) and 23(b)(3). *Wang v. Chinese Daily News, Inc.*, 709 F.3d 829, 836 (9th Cir. 2013).

Plaintiffs now seek recertification of the same class: "all non-exempt hourly employees who worked for Chinese Daily news, at its Monterey Park facility in California, at any time from March 5, 2000 through July 1, 2005." (Docket No. 918.) Plaintiffs' allegations remain the same. Plaintiffs filed the instant motion, which is fully briefed. Oral arguments from both Parties were heard.

## STANDARD OF LAW

"Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980–81 (9th Cir. 2011). Rule 23(a) "requires parties seeking class certification to establish: (1) that the class is so large that joinder of all members is impracticable (numerosity); (2) that there are one or more questions of law or fact common to the class (commonality); (3) that the named parties' claims are typical of the class (typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (adequacy of representation)." *Id.*

Rule 23(b) requires one of the following subdivisions to be met: (1) there is

3

a risk of inconsistent or unfair adjudication; (2) the defendant acted on grounds generally applicable to the class, making injunctive or declaratory relief appropriate as to the class as a whole; or (3) common questions of law or fact predominate and class resolution is superior to other amiable methods for fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b).

## ANALYSIS

### I.  FRCP 23(a) Prerequisites to a Class Certification are Satisfied

On remand, the Ninth Circuit instructed this Court:

> [T]he district court must determine whether the claims of the proposed class "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart,* 131 S.Ct. at 2551. . . [P]laintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution. So long as there is "even a single common question," a would-be class can satisfy the commonality requirement of Rule 23(a)(2). *Wal–Mart,* 131 S.Ct. at 2556.

*Wang*, 709 F.3d at 834.

Under current law, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (internal citation omitted). Class members must pose a question that will "produce a common answer to the crucial question *why was I disfavored.*" *Id*. at 2552; *see also Wang*, 709 F.3d at 834 (citations omitted) ("[T]he district court must determine whether the claims of the proposed class 'depend upon a common contention . . . that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"). A "district court [is] required to resolve any factual disputes necessary

4

to determine whether there was a common pattern and practice that could affect the class *as a whole.*" *Ellis*, 657 F.3d at 983. A "district court is required to examine the merits of the underlying claim in this context, only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." *Id.* at n.8. Further, "Rule 23 provides district courts with broad authority at various stages in the litigation to revisit class certification determinations and to redefine or decertify classes as appropriate." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 546 (9th Cir. 2013). In so doing, "[t]he district court should consult the entire record of [the] case." *Id.*

Below, the Court analyzes some of the common questions proffered by Plaintiffs to determine whether the class meets the standard of commonality under *Wal-Mart*. While acknowledging the long record in this case, the Court relies on evidence preceding trial and summary judgment unless otherwise noted.

> **i. Common Question: Whether Defendant failed to pay overtime compensation to non-exempt employees who worked more than 40 hours per week**

Plaintiffs argue there is a common question of whether CDN required employees to work more than eight hours per day and forty hours per week and refused to pay overtime to its employees in violation of California Labor Code § 510 and IWC Wage Orders 4-89 and 4-2001.

To support the commonality of this question, Plaintiffs provide several declarations showing that CDN employees were routinely required to work hours exceeding 8 hours per day or 40 hours per week, regardless of their job title or duties, and CDN employees were not provided overtime pay. (*See* Motion at Exh. 4-16.) Plaintiffs also provide evidence demonstrating that all class-member employees were given wage statements indicating that they worked 86.66 hours

5

1  per two-week pay period, and that employees' hourly wages were not increased
2  for overtime hours (hours exceeding 40 hours per week).[1]  Further, Plaintiffs argue
3  that CDN incorrectly calculated employees' regular or overtime rates of pay
4  because CDN had no system of tracking employees' hours until 2003.

5        The evidence and allegations presented to the Court demonstrate there is a
6  common question of whether CDN failed to comply with California and federal
7  laws relating to overtime pay for class employees.  Plaintiffs provide "significant
8  proof" that CDN's treatment of class members was consistent, not subject to
9  discretion, and that the entire class was injured by CDN's non-payment of
10 overtime premiums.  *Wang*, 737 F.3d at 543; *cf. Wal-Mart*, 131 S. Ct. at 2554.
11 Because there is "evidence that the entire class was subject to the same allegedly
12 discriminatory practice," there is a "question common to the class."  *Wang*, 737
13 F.3d at 543 (quoting *Ellis*, 657 F.3d at 983).  Further, the nature of this common
14 question, which focuses directly on CDN's pay practices and CDN's demands on
15 all employees, can "generate common *answers* apt to drive the resolution of the
16 litigation."  *Wal-Mart Stores*, 131 S. Ct. at 2551 (internal citation omitted) .
17 CDN's liability directly hinges on whether it had a "general policy" of not paying
18 employees correct wages for their overtime hours. *Id.* at 2552–53.  Plaintiffs
19 provide strong evidence that CDN had such a policy.

20       Defendant argues that not all proposed class members are entitled to
21 overtime wages because certain employees are "exempt" and are therefore not
22 protected by the FLSA.  However, Plaintiffs' proposed class consists only of non-
23 exempt employees.  (Motion at Exh. 1 p. 15.)

24       The Court finds that whether or not CDN had a policy of not paying

---

[1] The FLSA requires the payment of an overtime premium of one and one-half times the employee's regular rate of pay for all hours worked over forty in a week.  Wage Order 4-89 and California Labor Code § 510 require employers to pay employees one-and-one half times their regular rate for hours worked in excess of eight per day and in excess of forty per week, and at twice the regular rate for hours worked in excess of twelve per day and eight on the seventh day worked in a work week.

6

overtime wages is "an issue that is central to the validity of each one of the [Plaintiff's] claims in one stroke." *Wal–Mart,* 131 S. Ct. at 2551. Therefore, Plaintiffs have demonstrated a common question that supports class certification under Rule 23(a).

### ii. Additional Common Questions

"So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Wal–Mart,* 131 S.Ct. at 2556. As addressed above, Plaintiffs have met the Rule 23(a)(2) requirement. However, Plaintiffs include several additional common questions, including, but not limited to:

- Whether Defendant failed to provide accurate itemized wage statements;
- Whether Defendant failed to keep accurate records;
- Whether Defendant denied employees meal and rest breaks to which they were entitled; and
- Whether Defendant's companywide vacation buy-back policy was unlawful.

(Motion at 8:13-22.)

Defendant fails to raise any unsettled "factual disputes" that this Court must resolve before finding "there was a common pattern and practice that could affect the class as a whole." *Ellis*, 657 F.3d at 983 (internal emphasis omitted). Each of Plaintiff's common questions "is based on conduct which is not unique to the named plaintiffs" but instead applies to all class members. *Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 457 (C.D. Cal. 2012) (finding that a class action should be certified to resolve plaintiffs' claims against an employer for violations of California requirements for off-duty meal time) (internal citation and quotation omitted). Therefore, each of these questions may independently satisfy class certification requirement under 23(a)(2) under the *Wal-Mart* standard. Plaintiffs

1  have therefore met their burden under Rule 23(a). *Wal–Mart,* 131 S.Ct. at 2556.

## II. FRCP 23(b)(2) is not satisfied to certify a class action

This case was originally certified as a class action under Rule 23(b)(2). However, following *Wal-Mart*, class certification for monetary claims cannot stand under Rule 23(b)(2). *See Wal–Mart*, 131 S.Ct. at 2559–60. Therefore, the Ninth Circuit remanded for this Court to determine "whether, in light of *Wal–Mart,* the previously granted certification of a Rule 23(b)(2) class should continue for purposes of injunctive relief." *Wang*, 737 F.3d at 545–55. The Circuit advised that "because the Rule 23(b)(2) class was certified by the district court while [putative class members] were current employees, the class certification with respect to injunctive relief may survive if there are identifiable class members who are still employed by CDN." *Wang*, 737 F.3d at 545 (citing *Bates v. United Parcel Servs., Inc.,* 511 F.3d 974, 987 (9th Cir. 2007) (en banc). Plaintiffs acknowledged at hearing that there are currently no identifiable class members employed by CDN and Plaintiffs only seek to certify the class under Rule 23(b)(3). Accordingly, this issue is moot.

## III. Certification Under FRCP 23(b)(3) is Proper

The Ninth Circuit remanded this Court's earlier finding that Rule 23(b)(3) was satisfied and ordered this Court to reconsider (1) this Court's predominance inquiry under 23(b)(3) following new case law disallowing a presumption of class certification based on an employer's uniform exemption policy and (2) whether the this Court's decision to certify is changed by recent clarification of California law relating to an employer's duty to provide meal and rest breaks.

### i. Predominance of common issues under Rule 23(b)(3)

In order to satisfy Rule 23(b)(3), Plaintiffs must establish the superiority of class adjudication over individual adjudication and establish that the questions of law or fact common to class members predominate over any questions affecting

8

only individual members. Fed. R. Civ. P. 23(b)(3). As the Ninth Circuit explained, "[t]he predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang*, 737 F.3d at 545 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)).

In recent opinions challenging this Court's earlier certification of Plaintiffs class, the Ninth Circuit held that certifying a class under 23(b)(3) based on an employer's exemption policy "disregards the existence of other potential individual issues that may make class treatment difficult if not impossible." *Wang,* 737 F.3d at 545 (quoting *In Re Wells Fargo Home Mortg. Overtime Pay Litig.* 571 F.3d 953, 958 (9th Cir. 2009)). The Circuit reasoned that a "district court abuses its discretion in relying on an internal uniform exemption policy to the near exclusion of other factors relevant to the predominance inquiry." *Id.* (quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009)). However, "uniform corporate policies will often bear heavily on questions of predominance and superiority" and "centralized rules, to the extent they reflect the realities of the workplace, suggest a uniformity among employees that is susceptible to common proof." *Wells Fargo*, 571 F.3d at 958–59. The Ninth Circuit clarified that Rule 23(b)(3) predominance analysis properly "focuse[s] on whether the employer exercised some level of centralized control in the form of standardized hierarchy, standardized corporate policies and procedures governing employees, uniform training programs, and other factors susceptible to common proof." *Vinole*, 571 F.3d at 946.

The Court finds that common questions of law and fact predominate in this case. The "common questions" which establish Plaintiffs' commonality under 23(a) are the same questions that will drive the resolution of this litigation.

Further, the answers to each of Plaintiffs' common questions are susceptible to common proof and hinge on Defendant's uniform corporate policies and procedures which govern all of its employees.

CDN exercised "centralized control" over the Plaintiffs. Each of the proposed class members worked at the same CDN office in Monterey Park, California, with the same supervisors and administrative staff, implementing the same payroll policies without discretion. Therefore, the factual inquires necessary to resolve Plaintiffs' case are "susceptible to common proof." *Vinole*, 571 F.3d at 946. Addressing Plaintiffs' common questions as a class action avoids hundreds of unnecessary "mini-trials" by allowing the Court to address CDN's liability as to each of the nearly 200 class members with a single trial. *Vinole*, 571 F.3d at 947. The only individual issues remaining relate to individual plaintiffs' damages, and these cannot defeat certification. *Leyva v. Medline Industries Inc.*, 716 F.3d 510, 513–514 (9th Cir. 2013) *see also Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004, 139 Cal.Rptr.3d 315, 273 P.3d 513, 546 (2012) ("[T]o decertify a class on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device.") (internal citation and quotation marks omitted).

Considering the entire record of this matter confirms the predominance of class issues in resolving Plaintiffs' claims.[2]

Defendant argues that Plaintiffs' putative class cannot be certified because it includes CDN salespersons and reporters who were classified as exempt employees by the Defendant. Defendant argues that if the putative class contains exempt employees, then Plaintiffs' legal claims cannot apply commonly across the class and individual inquiries will dominate under Rule 23(b)(3). Defendant

---

[2] In fact, several of Plaintiff's common questions were decided in Summary Judgment because Defendant practiced blatantly unlawful practices. These practices included: issuing wage statements with a standard 86.66 hours per pay period, failing to provide wage statements to employees, and paying employees a fixed rate for vacation time (instead of paying an employee her higher daily rate).

1  argues, highlighting *Vinole* and *Wells Fargo*, that Defendant's uniform exemption
2  policy cannot satisfy the requirements for predominance.
3      Defendant's argument fails for two reasons. First, the Plaintiffs' class does
4  not contain exempt employees. As stated in Plaintiffs' class definition and as
5  determined by the Ninth Circuit, Plaintiffs' putative class includes only non-
6  exempt employees. *Wang*, 623 F.3d 743, 752 (9th Cir. 2010) *cert. granted,*
7  *judgment vacated on other grounds,* 132 S. Ct. 74 (U.S. 2011). Second, the
8  Court's certification of Plaintiffs' class is not based on Defendant's exemption
9  policy. The Court recognizes that "in cases where exempt status depends upon an
10 individualized determination of an employee's work, and where plaintiffs allege
11 no standard policy governing how employees spend their time, common issues of
12 law and fact may not predominate." *Vinole*, 571 F.3d at 946–47. However, unlike
13 in *Vinole*, the common questions warranting class certification in this case do not
14 require any inquiries into how much time each individual employee spent in or out
15 of the office and how the employee performed her job. *Id.* at 947. Defendant's
16 uniform payroll policies, vacation buy-back policy, and failure to provide meal
17 and rest breaks to employees do not require that this Court look at any CDN
18 employee's daily functions. Instead, Plaintiffs' claims require common evidence
19 showing that CDN's policies violated the rights of the class as a whole.
20 Therefore, certifying a class can streamline discovery and increase the efficacy of
21 this litigation, easing the burden of this Court—one of the key purposes of Rule
22 23(b)(3) predominance inquiry. *See Abdullah v. U.S. Sec. Associates, Inc.*, 731
23 F.3d 952, 965 (9th Cir. 2013).
24     CDN's exemption policy need not be an issue serving to obscure the
25 resolution of Plaintiffs' class action claims. "What a district court may not do is to
26 assume, *arguendo,* that problems will arise, and decline to certify the class."
27 *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv.*
28

*Workers Intern. Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 810 (9th Cir. 2010). This Court certified Plaintiffs' class and advanced to trial without the issue of exemption predominating over common issues. Therefore, there is no reason to assume that a problem will arise because of CDN's exemption policy. This Court finds that nearly all of the evidence in the record, including declarations and payroll receipts from class members of all job titles and descriptions, supports a finding that Plaintiffs' common questions predominate. *See Abdullah*, 731 F.3d at 965.

Therefore, Plaintiffs have satisfied the Rule 23(b)(3) predominance inquiry and class certification is GRANTED.

### ii. **California law, as clarified in *Brinker*, does not change the Court's analysis under Rule 23(b)(3)**

The Ninth Circuit directed this Court to consider new California case law, *Brinker Rest. Corp. v. Superior Court*, 273 P.3d 513 (Cal. 2012), in analysis of whether or not to grant Plaintiffs' motion for class certification.

One of Plaintiffs' common questions under Rule 23(a)(2) is whether CDN denied Plaintiffs meal and rest breaks to which they were entitled. The governing law on this question changed subsequent to Plaintiffs' earlier motion for class certification. In 2012, the California Supreme Court clarified California law, and held that an employer is obligated to "relieve its employee of all duty for an uninterrupted 30-minute period." *Wang*, 737 F.3d at 546 (quoting *Brinker Rest. Corp. v. Superior Court*, 273 P.3d 513, 536 n.19 (Cal. 2012)). Under California law, an employer is liable when an employee works through meal breaks if the employer "knew or reasonably should have known that the worker was working through the authorized meal period." *Id.* (internal citation and quotation omitted). An "employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks" or by "otherwise encouraging the skipping of legally protected breaks." *Id.* (internal

citation and quotation omitted).

In a case directly following *Brinker*, the California Court of Appeal further held that where an employer had a policy requiring employees to take on-duty meal breaks, class certification was proper. *Faulkinbury v. Boyd & Associates, Inc.*, 156 Cal. Rptr. 3d 632, 635 (Cal. App. 4th Dist. 2013). The court held that "*Brinker* teaches that we must focus on the policy itself and address the issue whether the legality of the *policy* can be resolved on a classwide basis." *Id*. at 641.

The Ninth Circuit has since considered *Brinker*'s impact on class action matters in the federal courts. *Abdullah*, 731 F.3d at 961. The Circuit found in *Abdullah* that under *Brinker* and *Faulkinbury* "an employer may be held liable under state law 'upon a determination that its uniform on-duty meal break policy is unlawful,' with the 'nature of the work' defense being relevant only to damages.'" *Abdullah*, 731 F.3d at 963 (quoting *Faulkinbury,* 156 Cal. Rptr. 3d at 643). The Circuit held that the underlying legality of a defendant's policy is a "significant question of law" that is "apt to drive the resolution of the litigation." *Id.* (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012); *Wal–Mart,* 131 S.Ct. at 2551). Therefore, current California and federal law affirm that CDN's uncontested lack of any meal or break policy is strong evidence favoring class certification in this matter. *See Bradley v. Networkers Int'l, LLC,* 211 Cal. App. 4th 1129, 1150 (2012), *as modified on denial of reh'g* (Jan. 8, 2013) ("The lack of a meal/rest break policy and the uniform failure to authorize such breaks are matters of common proof."), *review denied* (Mar. 20, 2013).

Defendant argues that there is evidence that CDN did not "prevent" employees from taking meal and rest breaks. (Opp'n at 25:14.) However, this is not the standard Plaintiffs must meet. Under California law, an employer must "relieve its employee[s] of all duty for an uninterrupted 30-minute period." *Brinker*, 273 P.3d at 536. The Ninth Circuit has further held that the legality of an

1 | employer's policy is a significant question of law supporting class certification.
2 | *Abdullah*, 731 F.3d at 963.  Plaintiffs provide strong evidence demonstrating that
3 | putative class members were not provided meal or rest breaks.  Defendant makes
4 | no showing that CDN allowed employees to take meal and rest breaks, much less
5 | provided such breaks.  Further, Defendant's lack of a meal and break policy is a
6 | factual question that is common to the class under Rule 23(a), and resolution of
7 | this question will "drive the resolution of the litigation." *Id*. (quoting *Wal–Mart,*
8 | 131 S.Ct. at 2551).
9 | The holding in *Brinker*, particularly as analyzed by *Abdullah,* supports a
10 | finding of commonality and predominance under Rule 23.  Therefore, upon
11 | consideration of contemporary California and federal case law, the Court reaffirms
12 | its decision to grant Plaintiffs' class certification under Rule 23(b)(3).

### IV. CONCLUSION

The Court Orders that Plaintiffs' Motion for Class Certification Following Remand is GRANTED pursuant to Rule 23(b)(3).

**IT IS SO ORDERED.**

DATED: April  15, 2014

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE